UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


RICHIE WILSON                                                    CIVIL ACTION

VERSUS                                                           NO. 18-13952

FLORIDA MARINE                                                   SECTION M (3)
TRANSPORTERS, LLC AND
WARREN PAVING, INC.


## ORDER & REASONS

Before the Court is a motion by third-party defendant Florida Marine, LLC ("Florida Marine") for summary judgment dismissing the claims for defense and indemnity brought against it by third-party plaintiff Warren Paving, Inc. ("Warren Paving").[1] Warren Paving responds in opposition[2] and both parties submit replies in further support of their respective positions.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court finds that Florida Marine's potential defense-and-indemnity obligation to Warren Paving cannot be determined at this juncture.

## I.  BACKGROUND

This matter concerns a maritime personal injury, and the motion before the Court relates to an indemnity provision contained in a fully-found charter agreement between two parties defending claims arising from the underlying accident. On July 1, 2018, Warren Paving, LLC ("Warren Paving") and Florida Marine, LLC ("Florida Marine") entered into a fully-found charter agreement with a one-year term under which Warren Paving, the "Charterer," would hire vessels from Florida Marine, the "Owner," on a fully-found basis according to the terms and

---

[1] R. Doc. 51.
[2] R. Doc. 56.
[3] R. Docs. 66 & 69.

conditions set forth in the contract.[4] The charter party includes the following indemnity provision:

> **INDEMNITY**: Owner agrees to indemnify, defend (including the payment of all reasonable attorneys' fees, expert witness fees and litigation expenses regardless of type) and hold harmless (collectively, "Indemnify") Charterer … from any and all losses, liens, claims, damages, expense, injury, liability, demands, fines, penalties or causes of action (collectively, "Claims") asserted against [Charterer] by any person, … including, but not limited to, Owner's employees for personal injury or death … arising from or relating to the condition or operation of the Vessel, regardless of whether covered by the insurance Owner is required to maintain under this Agreement.[5]

"Vessel" is defined as the *M/V Judith Ellen*, *M/V Samuel J*, and *M/V Capt WD Nunley*, together with all of their appurtenances, equipment, and accessories.[6] The choice-of-law clause specifies that the "[a]greement shall be governed by the general maritime laws of the United States and, to the extent not inconsistent therewith, the laws of the State of Louisiana, as applicable."[7]

On November 14, 2018, Richie Wilson, a deckhand employed by PBC Management, LLC ("PBC"), was assigned to the crew of the *Samuel J*, which was working pursuant to the charter party at Warren Paving's Slats Lucas Quarry loading dock on the Cumberland River near Salem, Kentucky.[8] The quarry's loading dock uses horizontal wire cables to move barges up and down the river in front of the facility.[9] A Warren Paving employee operates the cable system.[10] At the time of the accident, the *Samuel J* was positioned astern of a rock hopper barge. Wilson was instructed to go onto the barge to help a Warren Paving employee free one of the barge positioning cables.[11] Wilson alleges that he was injured when the barge positioning

---

[4] A "fully-found charter" is one in which the vessel owner mans, maintains, operates, navigates, and supplies the vessel. R. Doc. 51-2 at 2.
[5] *Id.* at 5-6.
[6] *Id.* at 1.
[7] *Id.* at 7.
[8] R. Doc. 16 at 2-3.
[9] *Id.* at 3.
[10] *Id.* at 6.
[11] *Id.* at 3.

system's wire cable violently struck him on the left shoulder causing him to fall twelve feet down onto the inside bottom of the barge.[12]  Wilson filed this suit seeking damages for his injuries against Florida Marine Transporters, LLC ("FMT"), Warren Paving, PBC, and FMT Industries, LLC.[13]  With respect to Warren Paving, Wilson alleges that Warren Paving's employee was negligent in his operation of the barge positioning cables, which was a proximate cause of the accident.[14]  Wilson also alleges that his injuries were caused by the negligence of PBS and FMT and the unseaworthiness of the *Samuel J*.[15]  Warren Paving filed a third-party complaint against Florida Marine seeking defense and indemnity under the terms of the charter party.[16]

## II. PENDING MOTION

Florida Marine filed the instant motion for summary judgment seeking dismissal of Warren Paving's defense-and-indemnity claim arguing that Wilson's claim against Warren Paving is not covered by the defense-and-indemnity agreement.[17]  Specifically, Florida Marine contends that the indemnity clause is not triggered because Wilson alleges that Warren Paving's employee was negligent in his operation of the barge positioning system, which Florida Marine argues does not stem from the operation or condition of the *Samuel J*.[18]  Florida Marine also argues that it did not agree to defend and indemnify Warren Paving for its own negligence.[19]

Warren Paving argues that Florida Marine's motion is premature because there has been no adjudication of its alleged negligence.[20]  Warren Paving reviews evidence obtained through

---

[12] *Id.* at 4.
[13] *Id.* at 1-2.
[14] *Id.* at 6-7.
[15] *Id.* at 4-6.
[16] R. Docs. 27 & 64.
[17] R. Doc. 51.
[18] *Id.* at 7-11.
[19] *Id.* at 11-14.
[20] R. Doc. 56 at 1.

3

discovery, arguing there is no proof that its negligence, or that of any of its employees, caused or contributed to the accident.[21] Rather, Warren Paving contends that the accident was caused by the improper operation of the *Samuel J*.[22] Warren Paving also argues that the applicability of the indemnity clause cannot be determined until there has been an adjudication on the merits of Wilson's case, particularly, with respect to liability.[23]

## III. LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

---

[21] *Id.* at 2-12 & 17-19.
[22] *Id.*
[23] *Id.* at 13-17.

4

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant

will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

B.  **Maritime Defense & Indemnity Clause**

It is undisputed that the charter party at issue is a maritime contract, and as such, general maritime law applies. *Angelina Cas. Co. v. Exxon Corp.*, 876 F.2d 40, 41 (5th Cir. 1989) (a charter party "is unquestionably a maritime contract"). It follows then that an indemnity clause in a charter party is interpreted according to federal maritime law. *Lirette v. Popich Bros. Water Transp., Inc.*, 699 F.2d 725, 728 n.11 (5th Cir. 1983) (citations omitted). A maritime contract is read as a whole, and a court does not "look beyond the written language of the contract to determine the intent of the parties unless the disputed language is ambiguous." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986) (citations omitted).

"Indemnity agreements are to be strictly construed." *Smith v. Tenneco Oil Co.*, 803 F.2d 1386, 1388 (5th Cir. 1986) (citation omitted). Words of indemnification contained in a maritime contract "are given their plain meaning unless the provision is ambiguous." *Lirette*, 699 F.2d at 728 n.11 (citing *Corbitt v. Diamond M Drilling*, 654 F.2d 329, 332 (5th Cir. 1981)). In *Corbitt*, the Fifth Circuit explained:

> A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage. Thus, for example, it is widely held that a contract of indemnity will not afford protection to an indemnitee against the consequences of his own negligent act unless the contract clearly expresses such an obligation in

> unequivocal terms. A contract to indemnify another for his own negligence imposes an extraordinary obligation. Thus[,] an indemnitor is entitled to express notice that under his agreement, and through no fault of his own, he may be called upon to pay damages caused solely by the negligence of his indemnitee. For the same reasons express notice is required where a party seeks to shift his contractual liability to indemnify a third party.

654 F.2d at 333 (internal citations omitted). As such, "[a]n indemnification of 'any and all claims' will not include the negligence of the indemnitee." *Seal Offshore, Inc. v. Am. Standard, Inc.*, 736 F.2d 1078, 1081 (5th Cir. 1984).

However, indemnity agreements containing language such as "arising out of" or "arising from or relating to" should be read broadly so that the indemnity obligation "encompass[es] all activities reasonably incident or anticipated by the principal activity of the contract." *Fontenot*, 791 F.2d at 1214. "It is only when the alleged indemnitor's contractual performance is *completely independent* of another party's negligent act that caused damage that [courts] apply a limitation to this general rule." *Int'l Marine, L.L.C. v. Integrity Fisheries, Inc.*, 860 F.3d 754, 761 (5th Cir. 2017) (emphasis in original) (citing *Maraton Pipe Line Co. v. M/V Sea Level II*, 806 F.2d 585, 591 (5th Cir. 1986)).

Florida Marine argues for the application of an "eight-corners rule" to the evaluation of its liability under the indemnity clause. Simply put, Florida Marine contends that Wilson's complaint alleges that Warren Paving was negligent in operating the barge positioning system, and thus coverage under the indemnity clause is not triggered because (1) Warren Paving's alleged conduct does not involve the condition or operation of the *Samuel J*, and (2) the indemnity clause does not expressly cover Warren Paving for its own negligence in unequivocal terms. Therefore, Florida Marine contends that, when the allegations of the complaint are read in conjunction with the indemnity clause, it has no obligation to defend and indemnify Warren Paving with respect to Wilson's claims.

7

Generally, an indemnitee does not have a cause of action against the indemnitor for indemnity until there is a determination of liability. *Hercules, Inc. v. Stevens Shipping Co.*, 698 F.2d 726, 733 (5th Cir. 1983). In this case, the defendants' respective liabilities, if any, for Wilson's accident and injuries have not yet been determined. On the pleadings alone, the Court cannot now determine whether Wilson's accident and injuries arose from the operation or condition of the *Samuel J*, or if, and to what extent, any negligence on Warren Paving's part contributed to the accident. Consequently, at this stage of the litigation, the Court is not in a position to adjudicate whether Florida Marine will or will not owe Warren Paving defense and indemnity under the indemnity clause for Wilson's claims.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Florida Marine's motion for summary judgment (R. Doc. 51) is DENIED.

New Orleans, Louisiana, this 27th day of September, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE