UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RICHIE WILSON | CIVIL ACTION |
| VERSUS | NO. 18-13952 |
| FLORIDA MARINE TRANSPORTERS, LLC AND WARREN PAVING, INC. | SECTION M (3) |

## ORDER & REASONS

Before the Court is a motion by defendant-in-crossclaim Warren Paving, Inc. ("Warren Paving") for summary judgment dismissing the claims for contribution and tort indemnity brought against it by plaintiffs-in-crossclaim Florida Marine Transporters, LLC, FMT Industries, LLC, and PBC Management, LLC (collectively, the "FMT entities").[1] The FMT entities respond in opposition,[2] and Warren Paving replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court finds that the FMT entities' contribution and tort indemnity claims against Warren Paving are ripe for dismissal with prejudice.

**I.  BACKGROUND**

This matter concerns a maritime personal injury, and the motion before the Court relates to a subrogation provision contained in a fully-found charter agreement. On July 1, 2018, Warren Paving and Florida Marine, LLC ("Florida Marine") entered into a fully-found charter agreement with a one-year term under which Warren Paving, the "Charterer," would hire vessels from Florida Marine, the "Owner," on a fully-found basis according to the terms and conditions

---
[1] R. Doc. 109.
[2] R. Doc. 123.
[3] R. Doc. 138.

set forth in the contract.[4] Under the charter party, Florida Marine was required to carry numerous insurance policies, including hull and machinery, protection and indemnity, full statutory pollution, commercial general liability, and workers' compensation.[5] With respect to such insurance policies, except for workers' compensation and pollution, Florida Marine was contractually required to name Warren Paving and its affiliated companies or entities "as additional assureds with a full waiver of subrogation against said parties."[6] The contract further provided that:

> Such naming and waiving shall not affect any rights of recovery Charterer would otherwise be entitled to in the absence of such provisions. Such additional insurance coverage shall be limited to the extent of the risks assumed by Owner herein and Owner's insurance coverage shall be considered primary to Charterer's insurance coverage with Charterer's insurance coverage being non-contributory to the extent of the risks and obligations assumed by Owner pursuant to the terms and conditions of this Agreement.[7]

The charter party also includes the following indemnity provision:

> **INDEMNITY**: Owner agrees to indemnify, defend (including the payment of all reasonable attorneys' fees, expert witness fees and litigation expenses regardless of type) and hold harmless … Charterer … from any and all losses, liens, claims, damages, expense, injury, liability, demands, fines, penalties or causes of action … asserted against [Charterer] by any person, … including, but not limited to, Owner's employees for personal injury or death … arising from or relating to the condition or operation of the Vessel, regardless of whether covered by the insurance Owner is required to maintain under this Agreement.[8]

"Vessel" is defined as the *M/V Judith Ellen*, *M/V Samuel J*, and *M/V Capt WD Nunley*, together with all of their appurtenances, equipment, and accessories.[9] The contract's choice-of-law clause specified that the "[a]greement shall be governed by the general maritime laws of the United

---

[4] A "fully-found charter" is one in which the vessel owner mans, maintains, operates, navigates, and supplies the vessel. R. Doc. 51-2 at 2.
[5] R. Doc. 109-4 at 4-5.
[6] *Id.* at 5.
[7] *Id.*
[8] *Id.* at 5-6.
[9] *Id.* at 1.

2

States and, to the extent not inconsistent therewith, the laws of the State of Louisiana, as applicable."[10]

Florida Marine fulfilled its insurance obligation by obtaining coverage from Continental Underwriters, Ltd. LLC ("Continental").[11] Under the Continental policies, the named assureds included Florida Marine and the FMT entities, and Warren Paving qualified as an additional assured with a waiver of subrogation for "liability arising out of operations performed by the Named Assured for the Additional Assured."[12]

On November 14, 2018, Richie Wilson, a deckhand employed by PBC Management, was assigned to the crew of the *Samuel J*, which was working pursuant to the charter party at Warren Paving's Slats Lucas Quarry loading dock on the Cumberland River near Salem, Kentucky.[13] The quarry's loading dock uses horizontal wire cables to move barges up and down the river in front of the facility.[14] A Warren Paving employee operates the cable system.[15] At the time of the accident, the *Samuel J* was positioned astern of a rock hopper barge. Wilson was instructed to go onto the barge to help a Warren Paving employee free one of the barge positioning cables.[16]

Wilson claims that he was injured when the barge positioning system's wire cable violently struck him on the left shoulder causing him to fall twelve feet down onto the inside bottom of the barge.[17] Wilson filed this suit against Warren Paving and the FMT entities seeking damages for his injuries.[18] With respect to Warren Paving, Wilson alleged that Warren

---

[10] *Id.* at 7.
[11] R. Doc. 109-6.
[12] *Id.* at 3 & 15.
[13] R. Doc. 16 at 2-3.
[14] *Id.* at 3.
[15] *Id.* at 6.
[16] *Id.* at 3.
[17] *Id.* at 4.
[18] *Id.* at 1-2.

Paving's employee was negligent in his operation of the barge positioning cables, which was a proximate cause of the accident.[19] Wilson also alleged that his injuries were caused by the negligence of the FMT entities and the unseaworthiness of the *Samuel J*.[20] Warren Paving filed a third-party complaint against Florida Marine seeking defense and indemnity under the terms of the charter party.[21] The FMT entities filed a cross-claim against Warren Paving seeking contribution for PBC Management's maintenance and cure obligation to Wilson, and "tort indemnity and/or contribution for all or part of such damages as may be assessed against Warren Paving."[22]

Florida Marine filed a motion for summary judgment seeking dismissal of Warren Paving's defense-and-indemnity claim arguing that the indemnity clause was not triggered because Wilson alleged that Warren Paving's employee was negligent in his operation of the barge positioning system, which Florida Marine argued did not stem from the operation or condition of the *Samuel J*, and Florida Marine did not agree to defend and indemnify Warren Paving for its own negligence.[23] This Court denied Florida Marine's motion finding that an indemnitee generally does not have a cause of action against the indemnitor for indemnity until there is a determination of liability, which had not yet occurred in this case.[24] On the pleadings alone, the Court could not determine whether Wilson's accident and injuries arose from the operation or condition of the *Samuel J*, or if, and to what extent, any negligence on Warren Paving's part contributed to the accident; and, consequently, the Court was not in a position to

---

[19] *Id.* at 6-7.
[20] *Id.* at 4-6.
[21] R. Docs. 27 & 64.
[22] R. Doc. 50.
[23] R. Doc. 51 at 7-14.
[24] R. Doc. 71 at 8.

4

adjudicate whether Florida Marine will or will not owe Warren Paving defense and indemnity under the indemnity clause for Wilson's claims.[25]

Thereafter, Warren Paving filed a motion for summary judgment seeking dismissal of Wilson's claims against it.[26] Wilson, in response, indicated that he was abandoning his claims against Warren Paving.[27] As such, the Court granted Warren Paving's motion and dismissed with prejudice Wilson's claims against it.[28]

## II.    PENDING MOTION

Warren Paving now seeks dismissal with prejudice of the FMT entities' tort indemnity and contribution claims.[29] Relying on *Marathon Oil Company v. Mid-Continent Underwriters*, 786 F.2d 1301 (5th Cir. 1986), Warren Paving argues that the FMT entities, who are named assureds, cannot seek indemnity and contribution from Warren Paving, an additional assured, because the waiver of subrogation prevents their insurer, Continental, from doing so directly.[30] In other words, the FMT entities cannot act as Continental's "cat's paw" to accomplish an end that would otherwise be forbidden to it.[31]

The FMT entities argue that it is premature to determine whether Warren Paving is an additional assured for Wilson's claims, and thus entitled to a waiver of subrogation.[32] The FMT entities contend that, under the charter party, Florida Marine is required to defend and indemnify Warren Paving for claims "arising from or relating to the operation or condition of the vessel" and was obligated to name Warren Paving as an additional assured only to that extent.[33] Thus,

---

[25] *Id.*
[26] R. Doc. 107.
[27] R. Doc. 116.
[28] R. Doc. 135.
[29] R. Doc. 109.
[30] R. Doc. 109-1 at 7-10.
[31] *Id.*
[32] R. Doc. 123 at 1.
[33] *Id.* at 5-14.

the FMT entities reason, if Florida Marine does not owe to Warren Paving defense and indemnity because Wilson's injuries did not arise out of the operation or condition of the vessel, Warren Paving is not entitled to additional assured status under the terms of the charter party, thereby making the waiver of subrogation inapplicable, and allowing the FMT entities to pursue contribution claims against Warren Paving.[34]

## III. LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record

---

[34] *Id.*

6

taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P.

56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

## B. Tort Indemnity and Contribution

The Fifth Circuit has recognized there is a "fundamental principle of insurance law [under which] an insurer cannot by way of subrogation recover against its insured *or an additional assured* any part of its payment for a risk covered by the policy." *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 521 (5th Cir. 2019) (emphasis in original) (quotations marks, brackets, and citations omitted); *Dow Chem. Co. v. M/V Roberta Tabor*, 815 F.2d 1037, 1043 (5th Cir. 1987). This rule evolved in the jurisprudence stemming from *Marathon Oil Company v. Mid-Continent Underwriters*, where the Fifth Circuit, considering the scope of a waiver-of-subrogation clause in an admiralty protection and indemnity policy, stated that:

> The underwriters that wrote a policy containing a provision waiving "all subrogation" against an additional assured contend that the clause does not mean what it says: the insurers argue that the waiver of subrogation applies only with respect to claims covered by the policy. Because that interpretation would render the waiver meaningless, we hold that, when underwriters issue a policy covering an additional assured and waiving "all subrogation" rights against it, they cannot recoup from the additional assured any portion of the sums they have paid to settle a risk covered by the policy, even on the theory that the recoupment is based on the additional assured's exposure for risks not covered by the policy.

786 F.2d at 1032. To that end, waivers of subrogation are generally broader than insurance coverage and apply even when "the insurance would not have protected the [additional] assured with respect to the liability arising out of the activity in which he was engaged … but would have insured against the *type of risk* that occurred." *Dow Chem.*, 815 F.2d at 1045 (emphasis in original); *see also Marathon Oil*, 786 F.2d at 1303-04 ("a waiver-of-subrogation clause reinforces the provision implied by law," that an insurer cannot seek reimbursement for a covered liability, but because "the clause is not merely redundant," it also precludes an insurer

8

from seeking to recoup amounts paid on claims even if the additional assured's liability arises from its uninsured capacity).

In *Marathon Oil*, the Fifth Circuit applied these principles to preclude an insurer (British Underwriters) from using an injured seaman (James Tye) to recoup from an additional assured (Marathon) amounts British Underwriters paid in settlement. Marathon chartered the *M/V Ron Marc* from B&C Boat Rentals under a charter party that required B & C to name Marathon as an additional assured on its protection and indemnity ("P&I") policy with a waiver of subrogation. Tye was injured while working aboard the *M/V Ron Marc*, and his injury was caused, in part, by the negligence of a crane operator employed by Marathon on its fixed platform. Tye filed two separate suits seeking recovery for his injuries: (1) one against British Underwriters, B&C, and Marathon in its capacity as charterer; and (2) another against Marathon in its capacity as platform owner. British Underwriters and Tye's settlement of suit number one included a provision (a notorious Mary Carter agreement) whereby Tye would repay British Underwriters a portion of any recovery he obtained from Marathon in suit number two. The Fifth Circuit held that British Underwriters as insurer could not recover any portion of its settlement with Tye from Marathon through Tye as plaintiff because Marathon was an additional assured entitled to a waiver of subrogation. 786 F.2d at 1301-04. Otherwise, British Underwriters would have been able to use Tye as its "cat's paw" to do what it was prohibited from doing directly by its waiver of subrogation.

A year later, the Fifth Circuit extended and applied these same principles to a self-insured entity in *Dow Chemical Co. v. M/V Roberta Tabor*. Dow chartered the *M/V Sugarland* from Scott Chotin, Inc. ("Chotin") pursuant to a contract that required Dow to obtain hull and P&I insurance naming Chotin as an additional assured with a waiver of subrogation. Dow elected to

9

self-insure for losses under $1,000,000 and was thus required to pay Chotin for any losses and indemnify Chotin for any claims that would have been covered by the required policies. The *Sugarland* was involved in a collision while it was towing barges that were bareboat chartered by Dow. Dow sued Chotin for damage to the barges and loss of use. The Fifth Circuit found that, as a self-insured, Dow was effectively Chotin's hull underwriter for any damage to the barges, and thus, due to the waiver of subrogation, could not recover against Chotin damages arising from the type of risk covered by the hull policy. However, Dow was permitted to pursue a loss-of-use claim against Chotin because neither a traditional hull nor a P&I policy would insure against that type of risk. 815 F.2d at 1043-45.

Warren Paving advocates for a further extension of the *Marathon Oil* anti-subrogation principles to forbid named insureds from acting as the insurer's "cat's paw" by seeking tort indemnity and contribution from additional insureds. Tort indemnity is an "archaic concept" that has been replaced in the maritime law with the doctrine of comparative fault. *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 833 (5th Cir. 1992) (citing *United States v. Reliable Transfer Co.*, 421 U.S. 397 (1975)). "Indemnity between liable maritime tortfeasors is now available only 'where proportionate degrees of fault cannot be measured and determined on a rational basis.'" *Id.* (quoting *Reliable Transfer*, 421 U.S. at 405). Only three viable indemnity theories remain in the maritime law: (1) "a vicariously liable or non-negligent tortfeasor [*i.e.,* 'defendants on which the law imposes responsibility even though they commit no negligent acts'] is entitled to indemnity from a co-debtor guilty of actual fault"; (2) the *Ryan* doctrine applicable to stevedoring operations; and (3) contractual indemnity. *Id.* at 833-34; *see also* 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 5:16 (6th ed. 2019). None of these tort indemnity theories applies in this case: Wilson seeks to impose liability on the FMT entities for their own alleged

negligence, the *Ryan* doctrine does not apply, and there is no contractual indemnity in favor of the FMT entities under the fully-found charter. Hence, the FMT entities' claim boils down to a claim for contribution arising from comparative fault.

Comparative fault means that damages are allocated "based upon the parties' respective degrees of fault." *Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 602 (5th Cir. 2010) (quotation marks and citations omitted). Under the general maritime law, when multiple defendants are found liable, they are also jointly and severally liable to a plaintiff. *Daigle v. L & L Marine Trans. Co.*, 322 F. Supp. 2d 717, 732 (E.D. La. 2004) (citing *Hardy*, 949 F.2d at 829); *see also McDermott, Inc. v. AmClyde,* 511 U.S. 202, 220-21 (1994); *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 (1979). The "rule of 'joint and several liability' permits a plaintiff to obtain full legal redress from any defendant, even if that defendant's actions were not solely responsible for the plaintiff's injuries." *Hardy*, 949 F.2d at 829.

To reconcile comparative fault with joint and several liability, maritime law recognizes the right of contribution between joint tortfeasors. SCHOENBAUM, *supra.* The right of contribution allows a defendant that pays more than its *pro rata* share of a judgment to collect from other parties their allocated portions of the judgment based on comparative fault. *Id.* A contribution cause of action arises, then, when a tortfeasor actually pays more than its share of the judgment. *Id.* The right of contribution, however, is extinguished when the plaintiff's claims against the purported joint tortfeasor are dismissed with prejudice, which acts as a full release. *AmClyde*, 511 U.S. at 217; *see also Lindsay v. Ports Am. Gulfport, Inc.*, 2016 WL 6821958, at *3 (E.D. La. Nov. 18, 2016) (recognizing that the *AmClyde* rule prohibiting contribution suits

11

against settling defendants applies when a plaintiff's claims against a defendant are dismissed with prejudice and has been extended to claims for tort indemnity).

Applying the foregoing principles, the FMT entities' contribution claim against Warren Paving cannot survive for two independent reasons. First, this Court, recognizing that Wilson abandoned his claims against Warren Paving, dismissed those claims with prejudice. Under *AmClyde*, that dismissal acts as a full release of Warren Paving for all liability for Wilson's claims and precludes the FMT entities' claim against Warren Paving for contribution. Second, in the current posture of the case, the FMT entities are defending against Wilson's claims by trying to establish that they were not at fault, or only minimally at fault, in part by seeking to impose some or all of the comparative fault on Warren Paving. If the FMT entities succeed in proving that Warren Paving bears any responsibility for the accident (a personal injury), any amount paid by the FMT entities' insurer would necessarily be for a type of risk (*viz.,* damages arising from a personal injury) that is insured under the Continental policies. Thus, under the anti-subrogation principles of *Marathon Oil* and *Dow*, the insurer would be prohibited from seeking to recoup from Warren Paving any amounts it paid out on the risk, and the insurer cannot use the FMT entities as named insureds to do what it could not do in its own name. It does not matter that the insurer has not been sued by Wilson as claimant (as in *Marathon Oil*) or that the FMT entities are not acting as self-insureds (as in *Dow*). That the insurance obligation exists under the fully-found charter, and the insurance is in place, requires that the waiver of subrogation be enforced against any "cat's paw" of the insurer (including its named assureds) to protect Warren Paving – as the beneficiary of the waiver of subrogation – from any liability arising out of activity for the type of risk required by the charter to be insured.[35]

---

[35] The FMT entities' good-for-the-goose/good-for-the-gander argument for denying Warren Paving's summary judgment motion fails because the insurance (or "naming and waiving") provision in the fully-found

12

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Warren Paving's motion for summary judgment (R. Doc. 109) is GRANTED, and the FMT entities tort indemnity and contribution claim against Warren Paving is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 2nd day of December, 2019.

                                                          BARRY W. ASHE
                                                        UNITED STATES DISTRICT JUDGE

---

charter is broader, applying as it does to liability arising out of the activity for the type of risk insured, than the indemnity provision, which is limited to claims "arising from or relating to the condition or operation of the vessel." *See Dow Chem.*, 815 F.2d at 1045.